IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMIE SOKOLOWSKI,

                                   Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

                                  Defendant.

OPINION AND ORDER

12-cv-942-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Jamie Sokolowski is seeking judicial review of the final decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's claim for disability benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. § 405(g). She contends that the administrative law judge erred in two respects: (1) her hypothetical question was inadequate because it included no reference to plaintiff's moderate limitations in concentration, persistence and pace; and (2) she accepted the vocational expert's testimony that plaintiff could do three to four-step work, although the expert had no basis on which to find that plaintiff could do such work. Defendant reads the complaint as including the additional contention that the administrative law judge misused the Medical-Evaluation Framework in determining that plaintiff could do light work, despite her inability to stand for the six hours a day that light work generally requires.

1

I conclude that the administrative law judge reached the right decision in this case and that the commissioner's denial of plaintiff's applications for benefits should be affirmed.

RECORD FACTS

Plaintiff Jamie Sokolowski was born on December 5, 1978. She first applied for disability and supplemental social security benefits on March 28, 2006 but her applications was denied after a hearing before an administrative law judge. Plaintiff filed again in 2009. After her applications were denied twice, she asked for a hearing and one was held before Administrative Law Judge Lisa Groeneveld-Meijer on May 19, 2011. The administrative law judge denied her applications in an opinion issued on July 15, 2011.

Plaintiff has a number of impairments, including diabetes that is controlled with an insulin pump, degenerative disc disease with sacroiliac joint pain, obesity (she is 5'8" and weighs more than 300 pounds) a learning disability and adjustment disorder with depressed mood. (The administrative law judge never identified the nature of plaintiff's learning disability, but noted that plaintiff had testified that she was a slow reader, easily distracted and unable to concentrate.) Plaintiff's primary physician, Sharon Hammond, believed that plaintiff could perform low stress jobs that allowed her to take unscheduled breaks every two hours during an eight-hour day and that her diabetes would rarely interfere with her attention or concentration. AR 780-85. A consulting psychologist, Desmonde Marcus, concluded that plaintiff was capable of understanding simple instructions and was mildly to moderately impaired in her ability to tolerate the stress and pressure of competitive

employment. AR 551-53. He assessed her as having adjustment disorder with depressed mood and moderate psychosocial stressors caused by her unemployment and difficulties in complying with her diabetic regimen. He estimated her IQ as "85 plus or minus 5 on the basis of vocabulary, syntax, receptive and expressive language skills, educational and occupational experience." AR 552.

Agency psychologist Dr. R. Owen Nelsen, Ph.D., evaluated plaintiff and concluded that she had organic mental and affective disorders. AR 554. He found that she had depression characterized by disturbances in her appetite and in her sleep, and moderate limitations in social functioning and in concentration, persistence and pace, but only mild restrictions in the activities of daily living. AR 564. He found that plaintiff's ability to carry out, understand and remember detailed instructions was markedly impaired, but not her ability to remember locations and work-like procedures, her ability to understand and remember very short and simple instructions or her ability to sustain an ordinary routine without special supervision and to make simple work-related decisions. AR 568. He found moderate limitations in the following:

- the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;

- the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

- the ability to interact appropriately with the general public;

- the ability to accept instructions and respond appropriately to criticism from supervisors;

3

- the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and

- the ability to respond appropriately to changes in the work setting. AR 569.

In Nelson's opinion, plaintiff retained sufficient mental capacity to concentrate on, understand and remember routine, repetitive instructions although she could be markedly impaired for detailed or complex technical instructions. AR 570. He believed she had the ability to carry out routine, repetitive and three to four-step tasks with adequate persistence and pace, considered within the context of her physical restrictions, although she could not handle detailed and complex tasks. Id. Dr. Jack Spear, Ph.D., another agency psychologist, concurred with these findings on June 28, 2010. AR 592.

In her written decision, the administrative law judge followed the required sequential evaluation of plaintiff's alleged disability. At step one, she found that plaintiff had not engaged in substantial gainful activity since November 23, 2004, her alleged onset date. At step two, she found that plaintiff had the severe impairments of diabetes controlled with an insulin pump, degenerative disc disease with sacroiliac joint pain, obesity, a learning disability, adjustment disorder and depression. At step three, she found that none of plaintiff's impairments met or equaled a listed impairment and that plaintiff had only mild limitations in activities of daily living and in social functioning, although she had moderate difficulties in concentration, persistence or pace. The administrative law judge noted that plaintiff complained that she was slow at reading, easily distracted and unable to concentrate, but that she did puzzles, crossword and otherwise, used the computer, crocheted daily and had earned a certificate in business from a community college after

finishing high school.

When determining plaintiff's residual functional capacity, the administrative law judge did not say anything about concentration, persistence and pace. Instead, she said that plaintiff was "limited to work involving one to two-step tasks with only occasional interaction with the public and coworkers." AR 37. Although she did not refer to Dr. Nelson's evaluation, this statement tracked his findings as to plaintiff's ability to interact with coworkers and the public. AR 569. The administrative law judge explained that she did not include any difficulties with concentration, persistence and pace in her evaluation of plaintiff's residual functional capacity because those limitations are not residual functional capacity considerations for steps four and five of the evaluation process. Rather, at that point, it is necessary to undertake a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). AR 36. After determining that plaintiff had the residual functional capacity to perform a range of light work, the administrative law judge found at step four that plaintiff could not perform any past relevant work; at step five, she found that plaintiff could perform jobs that existed in significant numbers in the national economy.

At the hearing, the administrative law judge posed a hypothetical question to the vocational expert that made no reference to "moderate difficulties in concentration, persistence and pace," but included the restriction that the hypothetical individual "would be limited to tasks that are one to two steps and have occasional interaction with the public

5

and coworkers." AR 145-46. She did not ask whether the expert had reviewed the medical evidence.

The vocational expert testified that such an individual could perform the jobs of hand packager, office helper, electronics worker or small product assembly and that a large number of these jobs existed in both Wisconsin and in the national economy. AR 146. Plaintiff's counsel then asked the expert why she had identified jobs that were listed in the Dictionary of Occupational Titles as having a reasoning level of two, when she had been asked to assume a hypothetical person who could perform only one to two-step tasks, which carry a reasoning level of one, according to Appendix C of the Dictionary. AR 148-53. (Level one reasoning is defined in the Dictionary of Occupational Titles, App. C, as the ability to "[a]pply commonsense understanding to carry out one- or two-step instructions"; level two reasoning is defined as the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." ) The expert maintained that her answer was not affected by the fact that the administrative law judge had confined her hypothetical question to jobs that require only one to two steps. In response to counsel's question whether the jobs she had listed could be performed "even under the one- or two-step limitation without it being a deviation," she said she stood by her opinion. In response to questioning by the administrative law judge about what her answer would be if she were asked about jobs with three to four steps, she said that the number of qualifying jobs would increase.

OPINION

A. <u>Adequacy of Hypothetical Question</u>

Plaintiff takes issue with the administrative law judge's use of "one to two-step jobs" as a surrogate for "moderate difficulties in concentration, persistence and pace." She contends that the administrative law judge's phrasing made the question the kind that the Court of Appeals for the Seventh Circuit has held repeatedly is inadequate for orienting the vocational expert to the totality of the claimant's limitations, including deficiencies of concentration, persistence and pace. <u>O'Connor-Spinner v. Astrue</u>, 627 F.3d 614, 619 (7th Cir. 2010) (hypothetical question confining hypothetical worker to "routine, repetitive tasks with simple instructions" did not give vocational expert adequate information to determine whether plaintiff is capable of performing jobs in national economy). <u>See also</u> <u>Young v. Barnhart</u>, 362 F.3d 905, 1003 (7th Cir. 2004); <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). But in <u>O'Connor-Spinner</u>, the court added that it had never insisted "on a per se requirement" that the specific terminology ("concentration, persistence and pace") be used in the hypothetical question. <u>Id.</u>, 627 F.3d at 619. <u>See also</u> <u>Arnold v. Barnhart,</u> 473 F.3d 816, 820, 823 (7th Cir. 2007) (administrative law judge asked vocational expert about jobs open to claimant who had difficulties with concentration, persistence and pace resulting from stress-induced headaches, frustration and anger, without referring explicitly to concentration, persistence and pace; court found administrative law judge's question sufficient because it identified need for low-stress, low-production work); <u>Sims v. Barnhart,</u> 309 F.3d 424, 431-32 (7th Cir. 2002) (finding that vocational expert's inquiry into "low-

7

stress, uncomplicated work" accounted for limitations arising partly from panic disorder).

In this instance, the administrative law judge found in steps two and three that plaintiff suffered from "moderate difficulties of concentration, persistence and pace," and then, as directed in Social Security Ruling 96-8p, went on in steps four and five to list the specific functions that plaintiff could or could not perform because of her "moderate difficulties": tasks involving more than one to two-step tasks and tasks that required her to interact with the public or with coworkers more than occasionally. This was a fair translation of the findings. As the administrative law judge had found, plaintiff was a slow reader, easily distracted and unable to concentrate, yet she could do puzzles of various types and use the computer and she had been able to finish high school and obtain a certificate in business from a community college. Moreover, it is consistent with the instructions in Social Security Ruling 96-8p that at steps four and five the administrative law judge is to perform a more detailed assessment of the mental impairments, translating the broad categories, such as "concentration, persistence and pace" by itemizing the various functions contained in the broad categories listed in 12.00 of the Listing of Impairments." 20 C.F.R. Pt. 404, Subpt. P., App. 1, p. 505-10.

This is not a case in which the administrative law judge failed to orient the vocational expert to plaintiff's limitations. She made a determination of those limitations, decided that they would not prevent plaintiff from performing simple work and then asked the vocational expert whether such simple work existed in the regional or national economy or both. She interpreted plaintiff's social functioning limitations as requiring only occasional contact with

8

coworkers or the public and she included such a limitation in her hypothetical question to the vocational expert: after the vocational expert had identified the jobs she believed that plaintiff could do, the administrative law judge asked whether restricting a person to brief and superficial contact with individuals and no sustained close contact would change the expert's job numbers and whether any of the jobs involved any decision making or day to day changes. The expert's answer was "no" to both questions.

### B. Use of Medical-Vocational Guidelines

Although plaintiff did not challenge the administrative law judge's use of the Medical-Vocational Framework directly, she does object to her finding that plaintiff was capable of working at jobs requiring "light exertion" instead of sedentary jobs, given the administrative law judge's finding that plaintiff is capable of standing for only four out of eight hours. Under Social Security Ruling 83-10, "the full range of 'light work' requires standing or walking, off or on, for a total of approximately 6 hours out of an 8-hour day."

Plaintiff's exertional capabilities exceed the limits for sedentary work, which involve lifting no more than 10 pounds at a time and occasionally standing or walking (very little to up to one-third of the day and generally no more than two hours). Social Security Ruling 83-10. When a claimant's abilities do not fall squarely into one range, Social Security Ruling 96-8p instructs the administrative law judge to use the rules as a framework for the decision. In this case, the administrative law judge did not limit plaintiff to sedentary work, which would have been error because plaintiff's exertional capabilities exceeded the limits

for sedentary work, but instead listed specific findings in her hypothetical question for the vocational expert (ability to lift 10 pounds frequently, 20 pounds occasionally, standing and walking for about four hours and sitting for up to six hours with normal breaks).

In response, plaintiff says only that because three out of the four jobs that the vocational expert identified were listed in the Dictionary of Occupational Titles as "light work," it was error for the administrative law judge to accept the vocational expert's testimony that plaintiff could perform any of the jobs. But this ignores the fact that the expert is entitled to rely on her training and experience to identify those jobs classified as "light work" that do not require standing for more than four hours. The expert was asked whether jobs existed in the national economy that could be performed by a hypothetical individual who could stand no more than six hours in a day; she responded by identifying four jobs that she believed could be performed by such an individual. In a process in which all of the jobs in the economy are divided into only five categories (sedentary, light, medium, heavy and very heavy), it is inevitable that each category will encompass a wide range of exertional requirements. When a claimant such as plaintiff can perform work that requires greater physical exertion than work at the sedentary level but cannot do the full range of "light" work, it is proper, even necessary, for the administrative law judge to call a vocational expert who can identify the specific jobs that a particular claimant can perform.

C. Reasoning Level

Plaintiff has devoted most of her argument to what she sees as the discrepancy

between the vocational expert's determination that she could perform jobs that are assessed as having a reasoning level of two, when the administrative law judge's hypothetical question limited plaintiff to jobs requiring only one to two-step tasks.  As I understand her argument, it is that the administrative law judge found her capable of doing work that involved only one to two-step tasks, presumably because she complained of being easily distracted and having difficulty maintaining her concentration; the vocational expert identified jobs that she thought conformed with this limitation, but all of the jobs she identified are classified in the Dictionary of Occupational Titles as three to four steps with a reasoning level of two.

Plaintiff acknowledges that the vocational expert testified that she relied on her own training and experience in identifying jobs that she believed plaintiff could perform, but argues that the expert did not explain in any more detail why any particular job she listed would fit plaintiff's reasoning level, leaving the administrative law judge with insufficient information on which to make her decision that plaintiff could perform the listed jobs. Plaintiff's counsel goes on at length about the erroneous reasoning level that the vocational expert assumed, but a close look at the hearing transcript shows that the issue is a chimera. The vocational expert identified jobs that were classified in the Dictionary as three to four-step jobs, but she explained that she knew from her training and experience that they were only one to two-step jobs.  If she was correct, then she was identifying jobs that had a reasoning level of one.

Plaintiff's counsel's rhetorical attack on the expert witness did not help illuminate the issues in dispute. It is true that the administrative law judge could have done a better job of

11

making a record on this issue. She could have questioned the expert more specifically about her assertion that despite the information in the Dictionary that the jobs were ranked as three to four step jobs, the expert believed that the jobs she had identified required no more than one to two steps. The administrative law judge got sidetracked when she asked the expert whether there would be more jobs in the economy that plaintiff could perform if she included in her hypothetical question jobs that required three to four steps. Although this was a tangent, it did provide an opportunity for the vocational expert to explain that if plaintiff could perform three to four-step tasks, there would be more jobs available to her than the one to two-step ones she had identified.

The vocational expert heard and understood the administrative law judge's first hypothetical question limiting plaintiff to jobs involving one to two steps and testified that there were jobs that met this limitation and the other limitations in the question, and that she knew this from her own experience. That she understood exactly what the administrative law judge was asking is evident from her answer to the question asked about three to four-step jobs, when she said that if jobs of that complexity were considered, the number of qualifying jobs would increase. In short, the administrative law judge had at least minimally sufficient evidence from which to find that plaintiff could perform these jobs and is therefore not disabled.

ORDER

IT IS ORDERED that plaintiff Jamie Sokolowski's motion for summary judgment,

dkt. #11, is DENIED and the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's applications for disability benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. § 405(g), is AFFIRMED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 5th day of September, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge